# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 19-60-WBV-KWR** |
| **IMAD FAIEZ HAMDAN, ET AL.** | **SECTION: D (4)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Counts 73 and 74 of the Superseding Indictment, filed by defendant, Imad Faiez Hamdan ("Hamdan").[1] The Government opposes the Motion.[2] After careful consideration of the parties' memoranda and the applicable law, the Motion to Dismiss is **DENIED.**

### I.   BACKGROUND

The defendants in this case, Hamdan and Ziad Odea Mousa ("Mousa"), owned and operated more than 30 food stores, convenience stores, and gas stations that operated under the name "Brothers Food Mart" in the State of Louisiana.[3] Hamdan and Mousa operated all of the locations of Brothers Food Mart under a central management system.[4] On October 10, 2019, the Government filed a 74-Count Superseding Indictment against Hamdan and Mousa.[5] Pertinent to the instant Motion, Hamdan is charged in Counts 73 and 74 with mail fraud in violation of 18 U.S.C. 1341.[6] The Government alleges that Hamdan devised a scheme to defraud

---

[1] R. Doc. 85.
[2] R. Doc. 116.
[3] R. Doc. 47 at ¶ 2; R. Doc. 60-1 at p. 2.
[4] R. Doc. 47 at ¶ 3; R. Doc. 60-1 at p. 2.
[5] R. Doc. 47.
[66] *Id.* at ¶¶ 58-69.

1

two workers' compensation insurance companies by mailing them false monthly payroll reports for Brothers Food Mart, which failed to include the total wages paid to undocumented workers and store managers.[7] The Government also alleges that Hamdan submitted to the insurance companies false documents in response to annual audits of Brothers Food Mart's workers' compensation insurance, which included false IRS Forms 941, false IRS Forms 940, and false payroll summaries that failed to report total wages paid to undocumented workers and store managers.[8]

On January 15, 2020, Hamdan filed the instant Motion to Dismiss Counts 73 and 74 for failure to state an offense under Federal Rule of Criminal Procedure 12(b).[9] Hamdan argues that Counts 73 and 74 must be dismissed because: (1) they are precluded by the language in the governing workers' compensation insurance policy, which stipulates a civil remedy for the circumstances described in the Superseding Indictment; and (2) even if Hamdan failed to report the payroll of undocumented workers, he cannot be held criminally responsible because of a policy exclusion for undocumented workers.[10] Hamdan first argues that both counts are prohibited under a provision in the workers' compensation policy at issue, which contractually stipulates the workers' compensation insurer's remedies if the employer intentionally misrepresents, understates or conceals payroll.[11] In other words, Hamdan asserts that the policy's stipulation as to the civil remedy should be enforced as written to

---

[7] *Id.* at ¶¶ 64-65.
[8] *Id.* at ¶ 66.
[9] R. Doc. 85.
[10] *Id.* at p. 1.
[11] R. Doc. 85-1 at p. 1.

preclude criminal charges.[12]  Hamdan asserts that in order to prove mail fraud under 18 U.S.C. § 1341, the Government must show: (1) a scheme to defraud; (2) the use of the mails to execute the scheme; and (3) the specific intent to defraud.[13]  Hamdan argues that the first element cannot be proven beyond a reasonable doubt when the policy excludes coverage for undocumented employees whose payroll the Superseding Indictment claims Hamdan wrongfully failed to report.[14]  Hamdan also claims that criminal intent cannot be found in this case due to his "good-faith belief" that the civil penalty set forth in the workers' compensation policy is the sole remedy under the contract when the insurer is victimized by fraud.[15]

Hamdan then argues that, because the workers' compensation policy at issue excludes coverage for employees who are employed in violation of law with the knowledge of the insured or its executive officers, and the Superseding Indictment alleges that Hamdan had actual knowledge of the employment of undocumented workers, the policy excludes coverage for the undocumented workers.[16]  Hamdan reasons that, because the policy premium is based only on employees and other persons covered by policy, he had no duty to report payments made to undocumented workers as part of the total payroll.[17]  Hamdan claims that the workers' compensation policy expressly provides that the premium is based only on payroll to employees or other persons who are covered by the policy.[18]

---

[12] *Id.* at p. 9.
[13] *Id.* at p. 10 (citing *United States v. Traxler*, 764 F.3d 486, 488 (5th Cir. 2014)).
[14] R. Doc. 85-1 at p. 10.
[15] *Id.* at p. 14.
[16] *Id.* at p. 2.
[17] *Id.* at pp. 2 & 12-13.
[18] *Id.* at p. 6.

Expanding on the purported exclusion of coverage for undocumented workers, Hamdan argues that the location of the exclusion provision "is at least confusing" based upon its location within the workers' compensation policy.[19] Hamdan asserts that the exclusion of coverage for employees who are knowingly employed in violation of the law is found under Part Two of the policy, which is designated as "Employer's Liability" coverage.[20] However, Hamdan asserts that the exclusion is also found under the heading "WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY," and, therefore, applies to workers' compensation and liability coverage.[21] Hamdan further argues that because the policy exclusion states "this insurance does not cover" certain situations, the exclusion refers to the entire insurance policy and is not limited to Part Two.[22] Hamdan argues that because the policy does not specify whether Hamdan had a duty to report payroll for undocumented workers, when the policy specifically excluded those workers from coverage, the contract is vague and the rule of lenity applies such that the contract must be resolved in his favor.[23]

The Government opposes the Motion, asserting that both of Hamdan's arguments in support of dismissal of Counts 73 and 74 lack merit.[24] Turning to Hamdan's first argument, that the civil remedy set forth in the workers' compensation policy precludes criminal prosecution, the Government argues that it

---

[19] *Id.* at p. 6.
[20] *Id.*
[21] *Id.* (emphasis added).
[22] *Id.*
[23] *Id.* at p. 7.
[24] R. Doc. 116.

was not a party to that contract and cannot be bound by its terms. The Government asserts that the public undeniably has an interest in preventing mail fraud, and that Hamdan was indicted on mail fraud to protect that public interest.[25] Regarding Hamdan's second argument, that he could not have had a scheme to defraud the insurance company because the workers' compensation policy did not cover undocumented workers, the Government asserts that the policy did, in fact, cover undocumented workers.[26] Even if Hamdan was correct, the Government claims his argument would fail because it does not account for the allegations in paragraphs 63 through 66 of the Superseding Indictment that the false payroll reports also omitted cash payments made to legally employed store managers.[27] The Government contends that, because the allegations of the Superseding Indictment must be taken as true, the Court may deny the Motion without further analysis.[28]

The Government further asserts that the workers' compensation policy does not exclude undocumented workers from coverage, pointing out that Louisiana law requires coverage for all employees, legally-employed and undocumented workers alike.[29] The Government claims that no employer or insurance company may contract to deprive undocumented workers of that law's protections.[30] In apparent

---

[25] *Id.* at p. 1.
[26] *Id.* at p. 2.
[27] *Id.*
[28] *Id.* (citing *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011)).
[29] R. Doc. 116 at p. 2 (*citing* La. R.S. 23:1035 (providing workers compensation to "every person" employed); *Artiga v. M.A. Patout & Son*, 95-1412 (La. App. 3 Cir. 4/3/96), 671 So.2d 1138, 1139 (holding that statutory phrase "every person" includes undocumented workers)).
[30] R. Doc. 116 at p. 2 (*citing* La. R.S. 23:1033 (providing that "[n]o contract . . . shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter [10] except as herein provided"); *Rodriguez v. Integrity Contracting*, 2009-1537 (La. App. 3 Cir. 5/5/10), 38 So.3d 511, 519).

recognition of that prohibition, the Government asserts that the workers' compensation policy states that any of its provisions in conflict with Louisiana's law on workers' compensation must be interpreted to conform to that law.[31] The Government argues that Hamdan's interpretation of the policy cannot be correct because either the state-law conformity provision of the policy would cure the conflicting terms, or the policy would be void as violative of Louisiana law.[32]

The Government further asserts that Hamdan's interpretation of the exclusion provision is strained and unreasonable.[33] The Government points out that, as Hamdan acknowledges, the exclusion appears in Part Two of the policy, the section for employers' liability insurance, rather than Part One, the section for workers' compensation insurance.[34] As such, the Government claims the exclusion relates to the employers' liability insurance portion of the policy, not the workers' compensation insurance portion.[35] The Government also points out that, although Hamdan relies upon the title at the top of the page upon which the exclusion appears, which refers to workers' compensation insurance and employers' liability insurance, it is simply a header that appears on all six pages of the policy and does not merge Parts One and Two.[36] Finally, the Government asserts that if the phrase "this insurance," as found in the exclusion, includes both the workers' compensation insurance in Part One and

---

[31] R. Doc. 116 at p. 2 (*quoting* R. Doc. 88-2 at p. 17, ¶ H.6).
[32] R. Doc. 116 at p. 3 (citing *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 1994) (under Louisiana law, "[i]nsurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy"); *Abbeville Offshore Quarters Inc. v. Taylor Energy co.*, 286 Fed.Appx. 124, 128 (5th Cir. 2008)).
[33] R. Doc. 116 at p. 3 (citations omitted).
[34] *Id.* (*quoting* R. Doc. 88-2 at p. 18, ¶ C.3 and at pp. 16 & 17).
[35] R. Doc. 116 at p. 4.
[36] *Id.* (*quoting* R. Doc. 88-2 at p. 18).

the employers' liability insurance in Part Two, as argued by Hamdan, then the exclusion would negate any workers' compensation coverage. The provision provides that, "This insurance does not cover: . . . any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law; . . . ."[37] The Government contends that such a self-negating interpretation of the policy makes no sense and should be rejected as strained and unreasonable.

The Government maintains that Hamdan had a scheme to defraud, and points out that Hamdan does not contest that the workers' compensation policy covered the allegedly legally employed store managers of Brothers Food Mart, whose wages were partially omitted from the payroll reports he mailed to the workers' compensation insurer.[38] Because the policy covered the undocumented workers, as well as the allegedly legally employed workers, whose wages were also omitted from the payroll reports, the Government argues that the mail fraud counts of the Superseding Indictment state an offense.[39] To the extend Hamdan argues that his knowledge of the terms of the insurance policy somehow prevented him from intending to deceive the insurance company with the false payroll reports, the Government asserts that a jury must decide the issue.[40]

---

[37] R. Doc. 116 at p. 4 (*quoting* R. Doc. 88-2 at p. 18, ¶ C.4).
[38] R. Doc. 116 at p. 5.
[39] *Id.*
[40] *Id.* at n. 1 (citations omitted).

## II.   LEGAL STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure permits a defendant to raise by a pretrial motion, "Any defense, objection, or request that the court can determine without a trial on the merits."[41] In the instant Motion, Hamdan seeks dismissal of Counts 73 and 74 of the Superseding Indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b).[42] Although not mentioned by the Government, Hamdan fails to specify which provision of Fed. R. Crim. P. 12(b) forms the basis of his request for dismissal.  Hamdan only mentions Fed. R. Crim. P. 12(b)(2) and 12(b)(3), generally, as the procedural means to challenge the sufficiency of an indictment.[43] Hamdan, however, asserts that the Government cannot prove two of the essential elements required to prove mail fraud under 18 U.S.C. § 1341, namely a scheme to defraud and criminal intent.[44] Thus, Hamdan appears to argue that Counts 73 and 74 fail to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v).

Federal Rule of Criminal Procedure 7(c) requires an indictment to contain "a plain, concise and definite written statement of the essential facts constituting the offense charged," and to state for each count, "the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged to have violated."[45] As explained by the Fifth Circuit, "Under the Sixth Amendment, an indictment must '(1) enumerate each prima facie element of the charged offense; (2)

---

[41] Fed. R. Crim. P. 12(b)(1).
[42] R. Doc. 85 at p. 1; R. Doc. 85-1 at pp. 2 & 7.
[43] R. Doc. 85-1 at p. 7.
[44] *Id.* at pp. 10 & 14.
[45] Fed. R. Crim. P. 7(c)(1).

inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions.'"[46] According to the Fifth Circuit, "[A]n indictment is sufficient if it 'contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend.'"[47] "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges."[48] "Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged."[49]

When considering a motion to dismiss the indictment for failure to state an offense, a court is required to "take the allegations of the indictment as true and to determine whether an offense has been stated."[50] Additionally, "A court must deny a motion to dismiss if the motion relies on disputed facts."[51] According to the Fifth Circuit, "The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper."[52]

---

[46] *United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000) (quoting *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996)).
[47] *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *Unites States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)).
[48] *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978) (citations omitted).
[49] *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (internal quotation marks and citations omitted); *See United States v. Massey*, 849 F.3d 262, 264 (5th Cir. 2017) (same).
[50] *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018) (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)) (internal quotation marks omitted).
[51] *USPlabs, LLC*, 338 F. Supp. 3d at 557; *See United States v. Covington,* 395 U.S. 57, 60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969) (holding that a court can resolve a pretrial motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense").
[52] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

## III. ANALYSIS

### A. Counts 73 and 74: Mail Fraud, in Violation of 18 U.S.C. § 1341.

Hamdan is charged in Counts 73 and 74 of the Superseding Indictment with mail fraud, in violation of 18 U.S.C. § 1341.[53] Section 1341 provides, in pertinent part, that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.[54]

To establish a violation of 18 U.S.C. § 1341, the Government must allege and prove the following four elements: (1) that the defendant knowingly devised or intended to devise a scheme to defraud; (2) that the scheme to defraud employed false material

---

[53] R. Doc. 47 at ¶¶ 40-53.
[54] 18 U.S.C. § 1341.

representations; (3) the use of the mails to execute the scheme; and (4) the specific intent to defraud.[55]

In the Superseding Indictment, the Government alleges that on or about December 1, 2008 through November 30, 2014, Hamdan "devised a scheme to defraud and to obtain money by materially false and fraudulent pretenses and representations from worker's compensation insurance companies, Insurance Company A and Insurance Company B."[56] The Government alleges that the scheme involved "paying employees and undocumented workers outside of the payroll system and failing to report these payments when reporting total payroll to the insurance companies."[57] The Government charges that, in furtherance of the scheme to defraud, Hamdan mailed and caused to be mailed false monthly payroll reports for Brothers Food Mart to Insurance Company A from January 2011 through December 2012, and to Insurance Company B from January 2013 through November 2014.[58] The Government alleges that the payroll reports failed to include total wages paid to undocumented workers and store managers.[59]

Taking the allegations of the Superseding Indictment as true, as the Court is required to do,[60] the Court finds that the Superseding Indictment sufficiently states

---

[55] *United States v. Boyd*, 309 F. Supp. 2d 908, 913 (S.D. Tex. 2004) (*citing* Fifth Circuit Pattern Jury Instructions: Criminal, 2001 Edition); *See United States v. Traxler*, 764 F. 3d 486, 488 (5th Cir. 2014) (citing *United States v. Bieganowski*, 313 F.3d 264, 275 (5th Cir. 2002)).
[56] R. Doc. 47 at ¶ 62.
[57] *Id.* at ¶ 63.
[58] *Id.* at ¶¶ 64 & 65.
[59] *Id.*
[60] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011); *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (quoting *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)) (internal quotation marks omitted).

an offense under 18 U.S.C. § 1341 because it sets forth all four essential elements of the offense. The Superseding Indictment tracks the language of 18 U.S.C. § 1341 with respect to the first two elements of the offense, a scheme to defraud and use of the mails to execute the scheme. Regarding the third element, that the scheme employed false material representations, the Superseding Indictment alleges that Hamdan mailed and caused to be mailed false monthly payroll reports for Brothers Food Mart that failed to include total wages paid to undocumented workers and store managers, and that Hamdan submitted false documents in response to annual audits of Brothers Food Mart's workers' compensation insurance.[61]

As to the specific intent to defraud, the Fifth Circuit has held that, "a defendant acts with the intent to defraud when he acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself."[62] The Fifth Circuit has recognized that, "Because the statute does not expressly mention intent, an indictment for mail fraud need not specifically charge the necessary specific intent."[63] More recently, the Fifth Circuit again noted that, "While specific intent is also an essential element of mail fraud, it need not be specifically charged in the indictment."[64] The Fifth Circuit further

---

[61] R. Doc. 47 at ¶¶ 64-66.
[62] *United States v. Akpan*, 407 F.3d 360, 370 (5th Cir. 2005) (quotations and internal quotation marks omitted).
[63] *See United States v. Kent*, 608 F.2d 542, 545 n.3 (5th Cir. 1979) (citations omitted)
[64] *United States v. Ratcliff*, 488 F.3d 639, 644 n.4 (5th Cir. 2007) (citing *United States v. Caldwell*, 302 F.3d 399, 409 n.8 (5th Cir. 2002)); *See Kent*, 608 F.2d at 545 n.3 (citations omitted).

recognized that using such language as "knowingly" or "willingly" in an indictment is sufficient to satisfy the specific intent element of mail fraud.[65]

Here, the Superseding Indictment clearly charges that Hamdan "for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and to obtain money by false and fraudulent pretense, *knowingly* caused to be delivered by United States Postal Service and private and commercial interstate carriers the following mailings . . . ."[66] While there is no requirement to charge specific intent in the Superseding Indictment, the Court finds that the Superseding Indictment contains sufficient language indicating that Hamdan is charged with the specific intent to commit the alleged mail fraud scheme. As in the Fifth Circuit cases cited above, the Court finds that the allegation that Hamdan acted knowingly is sufficient to allege his specific intent to commit mail fraud. Because the Superseding Indictment alleges facts that comprise the essential elements of the offense charged, mail fraud under 18 U.S.C. § 1341, the Superseding Indictment states an offense under Fed. R. Crim. P. 12(b)(3)(B)(v) with respect to Counts 73 and 74.

In the instant Motion, Hamdan argues that the Superseding Indictment fails to state an offense for mail fraud because the Government cannot prove beyond a reasonable doubt that he had a scheme to defraud or specific intent to defraud. Hamdan asserts that the Government cannot prove a scheme to defraud because he is charged with failing to provide payroll information for undocumented workers, and

---

[65] *Kent*, 608 F.3d at 545 n.3 (citation omitted); *United States v. Johnson*, Civ. A. No. 14-238, 2015 WL 8478397, at *2 (E.D. La. Dec. 10, 2015).
[66] R. Doc. 47 at ¶ 69 (emphasis added).

the workers' compensation policy at issue does not cover undocumented workers.[67] While the Government argues that undocumented workers are covered by the workers' compensation policy, the Court need not address these arguments. As the Government points out, Hamdan's argument fails to account for the fact that Counts 73 and 74 of the Superseding Indictment charge Hamdan with mail fraud based upon his mailing of false monthly payroll reports that "failed to include total wages paid to undocumented workers *and* store managers."[68] Nowhere in the Motion does Hamdan address the allegations in Counts 73 and 74 that he committed mail fraud by failing to provide accurate payroll information for allegedly legally employed Brothers Food Mart store managers.[69] As such, Hamdan has not shown that Counts 73 and 74 of the Superseding Indictment fail to state an offense for mail fraud under 18 U.S.C. § 1341.

With respect to the third element, specific intent to defraud, Hamdan asserts that the Government cannot prove criminal intent because Hamdan believed, in good faith, that the sole remedy for any fraudulent misrepresentations made to his insurer was a civil penalty set forth in the workers' compensation policy.[70] As previously discussed, however, the Fifth Circuit has clearly held that an indictment satisfies the specific intent element of mail fraud where the Government alleges that the defendant acted "knowingly" or "willingly."[71] The Court has determined that the

---

[67] R. Doc. 85-1 at p. 10.
[68] R. Doc. 47 at ¶¶ 64 & 65 (emphasis added).  *See* R. Doc. 116 at pp. 2 & 5.
[69] *See* R. Doc. 47 at ¶¶ 63-68.
[70] R. Doc. 85-1 at p. 14.
[71] *See supra* notes 62-65.

allegations in Counts 73 and 74 of the Superseding Indictment sufficiently allege the essential elements of an offense for mail fraud under 18 U.S.C. § 1341, including specific intent. Thus, the Court rejects Hamdan's argument that Counts 73 and 74 must be dismissed for failure to allege specific intent.

Finally, the Court feels compelled to address Hamdan's remaining argument for dismissal of Counts 73 and 74, which comprises the bulk of the instant Motion. Hamdan argues that any criminal liability for the fraudulent conduct alleged in Counts 73 and 74 is precluded by a stipulated civil remedy set forth in the workers' compensation insurance policy at issue. Hamdan acknowledges that the policy "is a contract between Mr. Hamdan, his company, Brothers Petroleum, Inc., and the insurer, Louisiana Construction & Industry Self Insurers Fund."[72] He does not allege or argue that the Government was a party to this policy. Notwithstanding that fact, Hamdan asserts that, "Both counts are prohibited in their entirety under a [workers' compensation] insurance policy provision, which contractually stipulates the [workers' compensation] insurer's remedies in the event the employer intentionally misrepresents, understates or conceals payroll."[73] Thus, while Hamdan *repeatedly* acknowledges that the workers' compensation policy contains a stipulated civil penalty that can be invoked only by the workers' compensation insurer,[74] Hamdan strenuously urges the Court to treat the provision as a bar to criminal liability.

---

[72] R. Doc. 85-1 at p. 5.
[73] *Id.* at p. 1.
[74] *Id.* at pp. 1, 5, 9, 13 & 14.

The Court refuses to adopt such an untenable position, which defies both reason and logic. Hamdan cites zero legal authority to support his position that an insurer's civil remedy for misrepresentations made by its insured, set forth in an insurance contract, can somehow preclude the United States of America from bringing criminal charges against the insured for the same allegedly fraudulent conduct. There is simply no legal basis asserted for Hamdan's argument that a civil remedy contained in an insurance contract can bar criminal prosecution for illegal conduct. Accordingly, the Court rejects Hamdan's argument that Counts 73 and 74 of the Superseding Indictment must be dismissed as precluded by a civil remedy set forth in the workers' compensation policy at issue.

Because the Superseding Indictment sufficiently states an offense under Fed. R. Crim. P. 12(b)(3)(B)(v), Hamdan's Motion to Dismiss Counts 73 and 74 of the Superseding Indictment must be denied.

IV. **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion to Dismiss Counts 73 and 74, filed by Imad Faiez Hamdan,[75] is **DENIED.**

New Orleans, Louisiana, June 23, 2020.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[75] R. Doc. 85.