UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 19-60-WBV-KWR** |
| **IMAD FAIEZ HAMDAN, ET AL.** | **SECTION: D (4)** |

## ORDER AND REASONS

Before the Court is Defendants' Joint Motion For Use of a Juror Questionnaire, filed by defendants, Imad Faiez Hamdan ("Hamdan") and Ziad Odeh Mousa ("Mousa").[1] The Government opposes the Motion.[2] After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED**.

### I.   BACKGROUND

The defendants in this case, Hamdan and Mousa, owned and operated more than 30 food stores, convenience stores, and gas stations that operated under the name "Brothers Food Mart" in the State of Louisiana.[3] Defendants operated all of the locations of Brothers Food Mart under a central management system.[4] On October 10, 2019, the Government filed a 74-Count Superseding Indictment against Defendants.[5] Defendants are charged in Count 1 with conspiracy to harbor illegal aliens by providing them with a means of financial support through employment at Brothers Food Mart stores, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I) & 8

---

[1] R. Doc. 160.
[2] R. Doc. 176.
[3] R. Doc. 47 at ¶ 2.
[4] *Id.* at ¶ 3.
[5] R. Doc. 47.

1

U.S.C. § 1324(a)(1)(B)(i).[6] Defendants are charged in Count 2 with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, for evading federal income and employment taxes[7] through underreporting the wages paid to Brothers Food Mart employees, including undocumented workers and store managers.[8] Defendants are charged in Counts 3 through 50 with failure to withhold, account for, and pay to the IRS certain trust fund taxes on behalf of the undocumented workers and store managers referenced in Count 2, in violation of 26 U.S.C. § 7202.[9] In Counts 51 through 72, Defendants are charged with aiding and assisting the preparation of false individual income tax returns for taxpayers other than themselves, in violation of 26 U.S.C. § 7206(2).[10] Finally, Hamdan is charged in Counts 73 and 74 with mail fraud, in violation of 18 U.S.C. 1341, for mailing false monthly payroll reports to two of Brothers Food Mart's workers' compensation insurance companies, which failed to include the total wages paid to undocumented workers and store managers.[11]

On March 1, 2020, Defendants filed the instant Joint Motion for Use of a Juror Questionnaire (the "Joint Motion"), asking the Court to issue a pretrial written juror

---

[6] *Id.* at ¶¶ 23-39.
[7] In the Superseding Indictment, the Government asserts that the Internal Revenue Code and associated statutes and regulations require employers to withhold from employees' gross pay federal income taxes and Federal Insurance Contribution Act ("FICA") taxes, which represent Social Security and Medicare taxes, and to account for and pay the withheld taxes to the IRS on a quarterly basis, but no later than the last day of the month following the end of the quarter. *Id.* at ¶ 18. The Government asserts that, "These taxes will be referred to in this Superseding Indictment collectively as 'trust fund taxes.'" *Id.* The Government further asserts that "employers are separately required to make contributions under FICA for Social Security and Medicare in amounts matching the amounts withheld from their employees' pay for those purposes." *Id.* at ¶ 19. The Government asserts that, "Trust fund taxes and employers' FICA contributions are commonly referred to as 'employment taxes.'" *Id.*
[8] *Id.* at ¶¶ 40-53.
[9] *Id.* at ¶¶ 54-55.
[10] *Id.* at ¶¶ 56-57.
[11] *Id.* at ¶¶ 58-69.

questionnaire to ensure the selection of an impartial jury.[12] While recognizing that district courts have substantial discretion when selecting a jury,[13] Defendants assert that the Court should allow a jury questionnaire in this case because the venire members are likely to have preexisting knowledge or biases due to the media coverage of this case, "the substantial profile of defendants' business in this community, and the current sensitivity surrounding immigration."[14] Defendants assert that such knowledge or bias may relate to Brother's Food Mart, the charges against Defendants, issues of alleged illegal immigration, or the ethnicity and religion of Defendants, who are Arab-American immigrants and practicing Muslims.[15] As such, Defendants ask the Court to utilize the six-page pretrial juror questionnaire that Defendants submitted with their Joint Motion.[16]

Defendants further assert that, "immigration and related enforcement policies are among the most important challenges in our country," and that the charges of this case intersect with potential jurors' views about immigration in general, and illegal immigration in particular.[17] Defendants also claim that research shows that Americans maintain certain biases against Muslims, and that prospective jurors will be more forthcoming on written questionnaires regarding their opinions and bias relating to Arabs and Muslims.[18] Defendants argue that the risk of juror bias against

---

[12] R. Doc. 160.
[13] R. Doc. 160-1 at p. 2 (citing *United States v. Rodriguez*, 993 F.2d 1170, 1176 (5th Cir. 1993); *United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980)).
[14] R. Doc. 160-1 at p. 4.
[15] *Id.* at pp. 1, 4.
[16] R. Doc. 160-2.
[17] R. Doc. 160-1 at p. 4.
[18] *Id.* at pp. 4-5.

them or against the Government's anticipated witnesses, based upon their ethnicity or faith, is not speculative, and that a written juror questionnaire is the most efficient, least intrusive, and most effective way for the parties to learn and explore any bias or preconceptions that jurors may have.[19]

The Government opposes the Joint Motion, asserting that a juror questionnaire is unnecessary, and that it would unduly prolong voir dire and highlight the ethnic and religious background of Defendants, thereby making it more of an issue at trial.[20] While the Government agrees that the Court should take any and all steps necessary to ensure a fair and impartial jury, the Government contends that any issues raised by the defense as to voir dire can best be addressed by the Court in its questioning of prospective jurors. The Government points out that the Court could address such issues from the bench or, if necessary, in chambers outside of the hearing of the entire jury panel, which would be much more efficient and effective than a questionnaire. While acknowledging that this case received some media coverage in March 2019, the Government claims it is highly unlikely that prospective jurors will have formed any opinion as to Defendants because the coverage was very limited in nature and there has been no media coverage since that time.[21]

The Government also asserts that the Court can address any issues as to ethnic or religious bias in its questioning of the prospective jurors, noting that the charges

---

[19] *Id.* at p. 5.
[20] R. Doc. 176 at p. 1.
[21] *Id.* at p. 2.

in this case have no relation to Defendants' ethnic or religious background.[22]  In fact, the Government argues that a jury questionnaire on this issue may have the opposite effect intended by Defendants, and could inject race and religion into a case that does not involve such issues.  The Government also points out that while Defendants cite several studies regarding Americans' attitudes towards immigration, Muslims and Islam, they cite no legal authority showing that such views have any effect on jurors' ability to be fair and impartial, or any instance where a questionnaire was more effective in revealing those biases than a live voir dire in open court.[23]  Finally, the Government asserts that a questionnaire is an unnecessary burden on the Court, the parties and the Clerk's office, that it is not an efficient or necessary use of the Court's resources, and that it would not speed up the voir dire process.[24]  As such, the Government argues that Defendants' Joint Motion should be denied.

## II.   LEGAL STANDARD

The Federal Rules of Criminal Procedure set forth a process for examining prospective jurors.  Under Rule 24, the Court may allow counsel to examine prospective jurors, or it may do so itself.[25]  Rule 24(a)(2) specifies that, if the Court examines the jurors, it must permit counsel to ask any additional questions that the Court considers proper or submit further questions that the Court may ask if it considers them proper.[26]  Under Fifth Circuit precedent, this Court has broad

---

[22] *Id.*
[23] *Id.* at p. 3.
[24] *Id.*
[25] Fed. R. Crim. P. 24(a)(1).
[26] Fed. R. Crim. P. 24(a)(2).

discretion in determining how best to conduct voir dire.[27] "A district court's failure to ask a proposed question does not constitute an abuse of discretion if the overall voir dire examination and the instructions given at trial adequately protect a party's interests."[28]

### III. ANALYSIS

After reviewing the arguments of the parties and the proposed six-page juror questionnaire submitted with Defendants' Joint Motion,[29] the Court agrees with the Government that Defendants have failed to provide a sufficient reason for the Court to depart from its traditional voir dire procedure used in criminal cases. The Court notes that its traditional voir dire procedure is to solicit proposed voir dire questions from counsel and determine from those proposed submissions appropriate questions for the venire. Further, once the Court conducts the voir dire, the Court intends to provide counsel an opportunity to suggest additional questioning or to conduct limited voir dire, if needed. There is no reason to believe that the issues raised in the Defendants' Joint Motion and proposed juror questionnaire cannot be adequately addressed by the Court during a live jury voir dire. As the Government points out, if an issue arises regarding a prospective juror, the Court may question the juror, at

---

[27] *United States v. Garcia-Flores*, 246 F.3d 451, 458 (5th Cir. 2001) (citing *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998)).
[28] *United States v. Harper*, 369 Fed.Appx. 556, 565 (5th Cir. 2010) (citations omitted) (district court did not abuse its discretion by denying defendant the opportunity to submit to jurors his proposed questionnaire); *See United States v. Flores*, 63 F.3d 1342, 1353 (5th Cir. 1995) ("[O]ur role is not to decide what voir dire procedure is best, but to determine whether the procedure chosen by the district court is sufficient. To do this, we ask 'whether the procedure used . . . created a reasonable assurance that prejudice would be discovered if present.'") (quotation omitted) (concluding that district court did not abuse its discretion in limiting voir dire by refusing to permit a long questionnaire to be sent to potential jurors).
[29] R. Doc. 160-2.

length, from the bench or in chambers, outside of the hearing of the entire jury panel.[30] The Court finds that this case does not warrant the extra time and expense associated with the issuance of a written juror questionnaire when counsel and the Court will be able to elicit the same information during the live voir dire process.

The Court recognizes that Defendants have cited two news articles from March 29, 2019, and a radio article dated March 30, 2019, as evidence of the media coverage of this case that could impact potential jurors.[31] Defendants, however, have failed to point to any media coverage of this case since that time. Moreover, the Court cannot ignore the fact that the world has changed dramatically since March 2019, with global attention now centered upon the novel COVID-19 pandemic. The fact that news stories from just a month ago are quickly forgotten due to the daily news coverage of COVID-19 related cases and deaths underscores the Court's firm belief that potential jurors will not have preexisting knowledge of this case or biases against Defendants based upon three local news stories from some year and a half earlier. The Court also agrees with the Government that several questions included in the Defendants' proposed jury questionnaire may have the opposite effect intended by the Defendants, and could inject race and religion into a case that does not concern those issues.

Based upon the foregoing, the Court finds that its standard voir dire practice will adequately address any preexisting knowledge or biases that potential jurors may have concerning this case.[32] Counsel will be provided an opportunity to offer

---

[30] *See* R. Doc. 176 at p.2.
[31] R. Doc. 160-1 at p. 1, n.1.
[32] *See United States v. Claville*, Crim. A. No. 07-50097-02, 2008 WL 782809, at *1 (W.D. La. Mar. 20, 2008) (denying defendant's motion for pretrial juror questionnaire).

suggested voir dire questions at the appropriate time. Further, if it appears during voir dire that supplemental questions are needed, the Court will entertain such a request from counsel at that time.[33] Accordingly, Defendants' Joint Motion, seeking the issuance of a pretrial written juror questionnaire, must be denied.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Joint Motion For Use of a Juror Questionnaire[34] is **DENIED.**

New Orleans, Louisiana, August 6, 2020.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[33] *Claville*, Crim. A. No. 07-50097-02, 2008 WL 782809 at *1.
[34] R. Doc. 160.