# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                        **NO. 19-60-WBV-KWR**

**IMAD FAIEZ HAMDAN, ET AL.**                   **SECTION: D (4)**

## ORDER AND REASONS

Before the Court is a Motion *In Limine* – Civil Settlement Agreement and Proceedings, filed by defendants, Imad Faiez Hamdan ("Hamdan") and Ziad Odeh Mousa ("Mousa").[1]  The Government opposes the Motion,[2] and Defendants have filed a Reply.[3]  At the request of the Court, the Government filed a supplemental memorandum.[4]  Thereafter, Defendants filed a response to the Government's supplemental memorandum.[5]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part** and **DENIED in part.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The defendants in this case, Hamdan and Mousa, owned and operated more than 30 food stores, convenience stores, and gas stations that operated under the name "Brothers Food Mart" in the State of Louisiana.[6]  On October 10, 2019, the Government filed a 74-Count Superseding Indictment against Defendants.[7]  The

---

[1] R. Doc. 112.
[2] R. Doc. 139.
[3] R. Doc. 144.
[4] R. Doc. 344.
[5] R. Doc. 345.
[6] R. Doc. 47 at ¶ 2.
[7] R. Doc. 47.

instant Motion concerns only Count One of the Superseding Indictment, which charges Defendants with conspiracy to harbor illegal aliens by providing them with a means of financial support through employment at Brothers Food Mart stores, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I) & 8 U.S.C. § 1324(a)(1)(B)(i).[8]  In Paragraph 10 of the Superseding Indictment, the Government alleges that, "On or about June 1, 2011, Defendant **IMAD HAMDAN** admitted that he and Brother's Petroleum failed to comply with employment eligibility verification requirements established by federal law, including the requirements surrounding the accurate preparation and retention of USCIS Form I-9 (Employment Eligibility Verification)."[9]

On January 24, 2020, Defendants filed the instant Motion, seeking to preclude the Government from introducing at trial a June 1, 2011 Settlement Agreement entered into between the United States Department of Homeland Security ("DHS") and Brother's Petroleum, LLC, a March 18, 2011 Notice of Intent to Fine issued by United States Immigration and Customs Enforcement ("ICE"), and a March 18, 2011 letter attached to the Notice of Intent to Fine, and seeking to preclude Paragraph 10 of the Superseding Indictment from being read or shown to the jury.[10]  Defendants assert that the documents and Paragraph 10 should be excluded because they are not relevant under Fed. R. Evid. 401 and/or because their probative value is substantially outweighed by the unfair prejudice to Defendants, as they would confuse and mislead the jury.[11]  Defendants assert that during discovery, the Government produced the

---

[8] *Id.* at ¶¶ 23-39.
[9] R. Doc. 47 at ¶ 10 (emphasis in original).
[10] R. Doc. 112.
[11] *Id.* at p. 1; R. Doc. 112-1 at pp. 5-10.

2011 Settlement Agreement in response to Defendants' request for evidence supporting the statement referenced in Paragraph 10 of the Superseding Indictment, and that the Settlement Agreement incorporates ICE's March 18, 2011 letter and Notice of Intent to Fine.[12]   Defendants claim that there are no allegations in the Notice of Intent to Fine that describe any type of violation for the employment of undocumented workers or illegal aliens, as charged in Count One of the Superseding Indictment.[13]   Defendants acknowledge that Count V in the Notice of Intent to Fine alleges a Form I-9 omission for the same individual described as Employee A in Paragraph 6 of the Superseding Indictment, but notes that the paperwork deficiency is "far less than as claimed in the Superseding Indictment that this Employee A was illegal."[14]   Defendants emphasize that both the 2011 Settlement Agreement and the Notice of Intent to Fine reference the civil penalty provisions of Section 274(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(1)(B) (the "Immigration and Nationality Act").[15]   Defendants also point out that the Settlement Agreement is civil in nature, was entered into between DHS and Brother's Petroleum, LLC, that neither Mousa nor Hamdan were personally a party to the Settlement Agreement, and that any statements therein were attributable only to Hamdan's company, Brother's Petroleum, LLC.[16]   Defendants claim that nothing in the Settlement

---

[12] R. Doc. 112-1 at pp. 2-3.
[13] *Id.* at p. 3.
[14] *Id.*
[15] *Id.* at pp. 4-5.
[16] R. Doc. 112 at p. 2.

Agreement implies or suggests any criminal conduct, nor does it contain any acceptance of criminal responsibility or culpability.[17]

Relying upon the Fifth Circuit's decision in *United States v. Hays*, Defendants argue that the Settlement Agreement and the Notice of Intent to Fine are not relevant to the offenses charge, as they concern only paperwork deficiencies, and do not involve the same parties charged in the Superseding Indictment.[18]  Defendants contend that if the Government failed to parse through these nuances, it is doubtful that the jury will, and that the risk that the jury will view the Settlement Agreement as an admission that Defendants were employing, and even harboring, illegal aliens is too great to allow the evidence into the record.[19]  Defendants further assert that the 2011 Settlement Agreement must be excluded under Fed. R. Evid. 408, which excludes from admission certain evidence "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount," including "conduct or statements made in compromise negotiations regarding the claim."[20]  Defendants contend that the exception for criminal cases set forth in Rule 408(a)(2) does not apply to completed settlements, noting that the Fifth Circuit has excluded settlement agreements in criminal cases.[21]  Defendants assert that the Government is trying to offer the 2011 Settlement Agreement as evidence of an "admission" of wrongdoing, which is the exact purpose prohibited by Rule 408.[22]

---

[17] *Id*.
[18] *Id*. at pp. 8-9 (citing *Hays*, 872 F.2d 582, 587 (5th Cir. 1989)).
[19] R. Doc. 112-1 at p. 9.
[20] *Id*. at p. 10 (*quoting* Fed. R. Evid. 408).
[21] R. Doc. 112-1 at p. 11 (citing *Hays*, 872 F.2d at 589).
[22] R. Doc. 112-1 at p. 13.

The Government opposes the Motion, asserting that the evidence is directly relevant to the conspiracy charged in Count One of the Superseding Indictment and not subject to exclusion under the Federal Rules of Evidence.[23]  The Government asserts that the March 18, 2011 letter from DHS to Hamdan states that DHS determined that Brothers Food Mart violated the Immigration and Nationality Act, that the company must immediately cease all illegal activity and that criminal penalties for the violation include imprisonment.[24]  The Government asserts that the Notice of Intent to Fine was enclosed with the March 18, 2011 letter and states that Brothers Food Mart failed to prepare, retain, and/or present the Employment Eligibility Verification Form (Form I-9), in violation of the Immigration and Nationality Act, for 25 of its employees.[25]  The Government points out that one of those employees was Zhakhangir Nizamov, and that the evidence shows Defendants knew before March 2011 that Nizamov was in the country illegally.[26]

According to the Government, DHS had arrested Nizamov two years earlier and had determined that he was an undocumented worker.[27]  The Government claims that within a few days, DHS discussed Nizamov's illegal status with Hamdan and that by letter dated July 27, 2009, in a Notice of Unauthorized Aliens, DHS informed Brothers Food Mart that Nizamov "has been deemed by ICE to be unauthorized to work in the United States."[28]  The Government avers that the 2009 letter stated that

---

[23] R. Doc. 139.
[24] R. *Id.* at p. 1 (*citing* R. Doc. 112-3 at p. 1).
[25] R. Doc. 139 at pp. 1-2 (*citing* R. Doc. 112-3 at pp. 2-7).
[26] R. Doc. 139 at p. 2 (*citing* R. Doc. 112-3 at p. 6).
[27] R. Doc. 139 at p. 2 (*citing* R. Doc. 47 at p. 3, ¶ 6).
[28] R. Doc. 139 at p. 2 (*citing* R. Doc. 47 at ¶¶ 7 & 8 and *quoting* R. Doc. 139-1) (internal quotation marks omitted).

without valid identification and employment eligibility documentation acceptable for completing the Form I-9, Nizamov would remain unauthorized to work and that criminal charges may be brought against any person or entity that engages in a pattern or practice of knowingly hiring or continuing to employ unauthorized aliens.[29] The Government asserts that the June 2011 Settlement Agreement between DHS and Brothers Food Mart, signed by Hamdan, settled the March 2011 Notice of Intent to Fine and explicitly states that it incorporates the allegations of the Notice of Intent to Fine.[30]  The Government contends that by incorporating the Notice, Hamdan and Brothers Food Mart agreed to the allegations in the Notice, including that they failed to comply with employment eligibility verification requirements established by federal law.

The Government argues that the 2009 Notice of Unauthorized Aliens, the March 18, 2011 letter and Notice of Intent to Fine, and the 2011 Settlement Agreement are relevant because they tend to make it more probable that Defendants' continued employment of undocumented workers and continued failure to complete Forms I-9 for all of their employees was not accidental, but knowing.[31]  The Government notes that intent is a fact of consequence in determining whether Defendants are guilty of conspiracy to harbor illegal aliens.[32]  The Government further asserts that Defendants' argument for exclusion under Fed. R. Evid. 408 is

---

[29] R. Doc. 139 at p. 2 (*quoting* R. Doc. 139-1) (internal quotation marks omitted).
[30] R. Doc. 139 at p. 2 (*citing* R. Doc. 112-2 at pp. 2, 3).
[31] R. Doc. 139 at p. 3. (*citing* Fed. R. Evid. 401).
[32] R. Doc. 139 at p. 3 (citing *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005); Pattern Crim. Jury Instr. 5th Cir. 2.01C).

not persuasive because Rule 408 only excludes compromise offers and negotiations, and neither the March 2011 letter nor the Notice of Intent to Fine were part of an attempt to compromise a claim. According to the Government, those documents were not part of an attempt to compromise a claim; instead, they were the claim.[33] The Government further asserts that the 2011 Settlement Agreement is admissible under the criminal-use exception set forth in Rule 408(a)(2), which creates an exception for the admissibility of conduct or statements made during compromise negotiations when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.[34] Although Defendants claim this exception does not apply to completed settlement agreements, the Government argues nothing in the text of Rule 408(a)(2) suggests such a limitation and the Sixth Circuit Court of Appeals has applied the exception to a completed settlement agreement.[35] The Government also contends that the 2011 Settlement Agreement is admissible under Rule 408(b), which provides that statements made in settlement may be admitted for purposes other than to prove the validity of a claim, because the 2011 Settlement Agreement was further notice to Defendants of their obligation not to employ undocumented workers and to complete and maintain Forms I-9 for all of their employees.[36]

---

[33] R. Doc. 139 at p. 4.
[34] *Id.* (*quoting* Fed. R. Evid. 408(a)(2)) (internal quotation marks omitted).
[35] R. Doc. 139 at p. 5 (citing *United States v. Paulus*, 894 F.3d 267, 280 (6th Cir. 2018); Fed. R. Evid. 408 Advisory Comm. Note to 1972 Proposed Rules).
[36] R. Doc. 139 at p. 6 (*quoting* Fed. R. Evid. 408(b)) (internal quotation marks omitted).

Finally, the Government asserts that the risk of prejudice does not outweigh the probative value of the 2011 Settlement Agreement because, contrary to Defendants' assertion, the Settlement Agreement does not show that Defendants were employing or harboring illegal aliens.[37]  Instead, and as alleged in Paragraph 10 of the Superseding Indictment, the Government claims the Settlement Agreement shows that Hamdan and Brothers Food Mart admitted that they failed to comply with employment eligibility verification requirements established by federal law, including the requirement to accurately prepare and retain Forms I-9.[38]  The Government distinguishes *United States v. Hays* on the basis that the decisive factor in that case was relevance, not unfair prejudice.[39]  The Government argues that the Court should deny the instant Motion because all of the documents at issue are relevant to Defendants' intent, their probative value is not substantially outweighed by any danger of unfair prejudice, confusion, or misleading the jury, and the 2011 Settlement Agreement is admissible under Fed. R. Evid. 408(a)(2).

In response, Defendants assert that the Government's Opposition brief is full of contradictions, much like the Government's statements during the February 5, 2020 oral argument on Defendants' Motion to Compel before Chief Magistrate Judge Karen Wells Roby.[40]  By way of example, Defendants contend that the Government maintains that the three documents show Defendants had notice of Brothers Food Mart's continued employment of undocumented workers, despite the Government

---

[37] R. Doc. 139 at pp. 6-7 (*quoting* R. Doc. 112-2 at pp. 9-10) (internal quotation marks omitted).
[38] R. Doc. 139 at p. 7 (*citing* R. Doc. 47 at ¶ 10).
[39] R. Doc. 139 at p. 7 (citing *Hays*, 872 F.2d 582, 587-88 (5th Cir. 1989)).
[40] R. Doc. 144 at p. 1 (*citing* R. Doc. 100; R. Doc. 138).

admitting during the hearing that the 2011 Settlement Agreement is based on only a failure to maintain proper paperwork.[41]   Defendants maintain that the March 18, 2011 Notice of Intent to Fine, the March 18, 2011 letter attached thereto, and the 2011 Settlement Agreement are not relevant because they do not concern undocumented workers and, as such, cannot constitute notice of a problem of which there existed no evidence at the time.[42]   Defendants also maintain that the documents should be excluded under Fed. R. Evid. 403 because the risk is too great that the jury will mistakenly believe that they constitute warnings to Defendants that they were employing undocumented workers.[43]   Defendants contest the Government's assertion that they admitted any wrongdoing by incorporating the Notice of Intent to Fine and its cover letter into the 2011 Settlement Agreement, asserting that, at best, Defendants agreed that the Government charged them with the alleged violations without admitting the allegations themselves.[44]   As such, Defendants maintain that the 2011 Settlement Agreement and its attachments constitute settlement offers and acceptances, which must be excluded under Fed. R. Evid. 408(a)(1).[45]   Defendants further assert that the Government's reliance on *United States v. Paulus* is misplaced because, unlike the defendant in that case, Defendants are objecting to the introduction of the 2011 Settlement Agreement and its attachments and there are no statements in those documents that amount to an admission of fault.[46]   Finally,

---

[41] R. Doc. 144 at pp. 1-2 (*citing* R. Doc. 139 at p. 6; R. Doc. 138 at p. 49).

[42] R. Doc. 144 at p. 3 (*citing* R. Doc. 144-1 at p. 49).

[43] R. Doc. 144 at pp. 3-4.

[44] *Id*. at p. 6.

[45] *Id*.

[46] *Id*. at pp. 6-7 (citing *Paulus*, 894 F.3d 267, 280 (6th Cir. 2018)).

Defendants take issue with the Government's reference to a July 27, 2009 Notice of Unauthorized Aliens, and assert that the facts surrounding Zhakhangir Nizamov's employment at Brother's Petroleum, LLC do not comport with the alleged conspiracy charged in the Superseding Indictment.[47]

On March 26, 2021, the Court Ordered the Government to provide a supplemental memorandum addressing three issues that were not addressed in the Government's Opposition brief: (1) whether there is any contradiction between the Government's position in its Opposition brief and statements made during the February 5, 2020 hearing; (2) Defendants' argument that Paragraph 10 of the Superseding Indictment should not be read or shown to the jury because the 2011 Settlement Agreement was entered into between ICE and Brother's Petroleum, LLC, not Hamdan; and (3) Defendants' argument that the 2011 Settlement Agreement should be excluded under Fed. R. Evid. 408 because the Government intends to offer it as an admission of wrongdoing.[48]

On April 1, 2021, the Government filed a Supplemental Memo addressing those issues.[49] The Government first argues that there is no contradiction between its Opposition brief and statements made during the February 5, 2021 hearing, since the Government's position is that the three documents are relevant because they placed Defendants on notice of their legal obligations not to employ undocumented workers and to complete and maintain Forms I-9 for their employees.[50] The

---

[47] R. Doc. 144 at pp. 7-10.
[48] R. Doc. 343.
[49] R. Doc. 344.
[50] *Id*. at p. 3.

Government claims that while there was some confusion during the hearing, it had clarified that the 2011 Notice of Intent to Fine referenced one undocumented worker – Nizamov – who is the same person referenced as "Employee A" in the Superseding Indictment.[51]  The Government then asserts that the 2011 Settlement Agreement is admissible as to Hamdan because he signed it on behalf of Brother's Petroleum, LLC, which shows that he knew about the legal obligation to complete Forms I-9 to ensure that Brothers Food Mart did not hire undocumented workers.[52]  The Government further claims that the 2011 Settlement Agreement is admissible under Fed. R. Evid. 801(d)(2)(A) as an opposing party's statement, and that Paragraph 10 of the Superseding Indictment correctly states that Hamdan admitted that both he and Brother's Petroleum, LLC failed to comply with the legal obligation to complete and maintain Forms I-9.[53]  Finally, the Government asserts that because it does not intend to offer the 2011 Settlement Agreement as an admission of criminal wrongdoing, Defendants' arguments under *United States v. Cooper* are moot.[54]

In response, Defendants argue that the Government's Supplemental Memo only adds additional confusion to these issues, and Defendants maintain that the only purpose of introducing the three documents is to establish a prior bad act, specifically that Brothers Food Mart stores violated Form I-9 requirements before the charged conduct occurred.[55]  Defendants assert that prior bad acts evidence is not admissible

---

[51] *Id*. at pp. 4-6 (*citing* R. Doc. 144-1).
[52] R. Doc. 344 at p. 6.
[53] *Id*. at pp. 6-7.
[54] *Id*. at pp. 7-8 (citing *Cooper*, 283 F.Supp. 2d 1215, 1228 (D. Kan. 2003)).
[55] R. Doc. 345 at p. 2.

unless it satisfies the two requirements of Fed. R. Evid. 404(b), neither of which are met in this case.[56]  Defendants maintain that Fed. R. Evid. 408 bars evidence of the settlement, including all three documents at issue.[57]

## II.    LEGAL STANDARD

### A. Fed. R. Evid. 401, 402 & 403: Relevant and Admissible Evidence.

According to the Fifth Circuit, the purpose of a motion in limine is to prohibit opposing counsel "from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[58]  Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action.[59]  Additionally, relevant evidence is admissible unless any of the following provides otherwise: (1) the United States Constitution; (2) a federal statute; (3) the Federal Rules of Evidence; or (4) other rules prescribed by the Supreme Court.[60]  Irrelevant evidence is not admissible.[61]  In

---

[56] *Id*. at pp. 2-5.
[57] *Id*. at pp. 5-6.
[58] *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quotation and internal quotation marks omitted).
[59] Fed. R. Evid. 401.
[60] Fed. R. Evid. 402.
[61] *Id*.

criminal cases, however, evidence must be strictly relevant to the particular offense charged.[62]

While all relevant evidence is admissible, the Court may exclude relevant evidence if its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[63]   The Fifth Circuit, however, has warned that, "The exclusion of evidence under Rule 403 should occur only sparingly."[64]   The Fifth Circuit has explained that, "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[65]   District courts are afforded wide discretion in determining the relevance and admissibility of evidence under Fed. R. Evid. 401 and 402.[66]

### B. Fed. R. Evid. 408: Compromise Offers and Negotiations

According to the Fifth Circuit, "Rule 408 makes inadmissible evidence of 'furnishing or offering or promising to furnish . . . a valuable consideration in compromising or attempting to compromise a claim,' as well as 'conduct or statements made in compromise negotiations regarding the claims.'"[67]   Rule 408(b) further

---

[62] *United States v. Dvorin*, 817 F.3d 438, 448 (5th Cir. 2016) (quoting *United States v. Hernandez-Guevara*, 162 F.3d 863, 869 (5th Cir. 1998)); *See*, *United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989).

[63] Fed. R. Evid. 403.

[64] *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993); *See, United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (same).

[65] *Pace*, 10 F.3d at 1115-16 (quotation omitted).

[66] *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S.Ct. 1140, 1144-45, 170 L.Ed.2d 1 (2008).

[67] *United States v. Fernandez*, 559 F.3d 303, 318 (5th Cir. 2009) (*quoting* Fed. R. Evid. 408).

provides that, "The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."[68]  This Fifth Circuit has made clear that, "In this circuit, Rule 408 applies to criminal cases."[69]  The Fifth Circuit has also held that the exceptions set forth in Rule 408(b) apply to settlement agreements.[70]  In doing so, the Fifth Circuit warned that the framers of Rule 408 clearly contemplated that "the potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound.  It does not tax the imagination to envision a juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back."[71]  According to the Fifth Circuit, it is within the district court's discretion to allow evidence of a compromise for purposes other than to prove liability for or invalidity of the claim or its amount.[72]

### III.   ANALYSIS

**A. The 2011 Settlement Agreement, March 18, 2011 Notice of Intent to Fine and March 18, 2011 Letter Attached to the Notice are relevant to the conspiracy charged in Count One of the Superseding Indictment under Fed. R. Evid. 401.**

Despite Defendants' arguments to the contrary, the Court finds that the 2011 Settlement Agreement, the March 18, 2011 Notice of Intent to Fine, and the March 18, 2011 letter attached to the Notice of Intent to Fine are relevant to the conspiracy

---

[68] Fed. R. Evid. 408(b).

[69] *Fernandez*, 559 F.3d at 318 (citing *United States v. Hays*, 872 F.2d 582, 588-89 (5th Cir. 1989)).

[70] *Hays*, 872 F.2d at 588-89.

[71] *Id.*

[72] *Branch v. Fidelity & Cas. Co. of New York*, 783 F.2d 1289, 1294 (5th Cir. 1986) (citing *Belton v. Fibreboard Corp.*, 724 F.2d 500 (5th Cir. 1984).

charged in Count One of the Superseding Indictment.  The three documents concern the failure of Brother's Petroleum, LLC to comply with the Immigration and Nationality Act,[73] which concerns the unlawful employment of aliens.[74]  In the 2011 Notice of Intent to Fine, which is referenced in the March 18, 2011 letter[75] and incorporated into the 2011 Settlement Agreement,[76] ICE asserts that Brother's Petroleum, LLC (a Brothers Food Mart store)[77] hired certain individuals listed therein after November 6, 1986 and "failed to prepare, retain, and/or present the Employment Eligibility Verification Form (Form I-9)" for certain individuals,[78] failed to ensure that certain individuals "completed section 1 of the Form I-9 at the time of hire,"[79] and failed to properly complete section 2 or section 3 of the Form I-9 for certain individuals.[80]  The Notice of Intent to Fine further specifies that Brother's Petroleum, LLC is in violation of the Immigration and Nationality Act and that ICE has assessed a civil monetary penalty for each alleged violation, in the total amount of $21,175.00.[81]

In Count One of the Superseding Indictment, Defendants are charged with conspiracy to harbor, conceal and shield illegal aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v)(I) and 8 § U.S.C. 1324(a)(1)(B)(i).[82]  As set forth in great

---

[73] R. Doc. 112-2 at pp. 2, 3; R. Doc. 112-3 at pp. 1, 2, 4-7.
[74] 8 U.S.C. § 1324a.
[75] R. Doc. 112-3 at p. 1.
[76] R. Doc. 112-2 at p. 2, ¶ 2.
[77] *See*, R. Doc. 47 at ¶¶ 3-4.
[78] R. Doc. 112-3 at pp. 4, 5.
[79] *Id*. at p. 5.
[80] *Id*. at pp. 6, 7.
[81] *Id*. at pp. 4-7.
[82] R. Doc. 47 at ¶¶ 23-39.

detail in the Court's June 12, 2020 Order and Reasons denying Defendants' Motion to Dismiss Count One of the Superseding Indictment,[83] to establish that Defendants harbored illegal aliens, the Government must allege and prove beyond a reasonable doubt the following four elements: (1) the alien entered or remained in the United States in violation of the law; (2) the defendant concealed, harbored, or sheltered the alien in the United States; (3) the defendant knew or recklessly disregarded that the alien entered or remained in the United States in violation of the law; and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States illegally.[84]

> In the Superseding Indictment, the Government alleges the following:

>> Beginning at a time unknown to the Grand Jury, but no later than July 2009, and continuing through the date of this Indictment, within the Eastern District of Louisiana and elsewhere, defendants **IMAD HAMDAN** and **ZIAD MOUSA**, and others, both known and unknown to the Grand Jury, knowing and in reckless disregard of the fact that aliens had come to, entered, and remained in the United States in violation of law, did knowingly and intentionally combine, conspire, confederate and agree with each other to conceal, harbor, and shield from detection and attempt to conceal, harbor, and shield said aliens from detection by providing said aliens with a means of financial support through employment at Brothers Food Marts in the Eastern District of Louisiana, said violation having been committed for the purpose of commercial advantage or private financial gain.[85]

In setting forth the manner and means by which Defendants and their co-conspirators carried out the conspiracy, the Government alleges, among other things,

---

[83] R. Doc. 224.

[84] *United States v. De Jesus-Batres*, 410 F.3d 154, 160 (5th Cir. 2005).

[85] R. Doc. 47 at ¶ 24.

that Defendants encouraged and permitted managers of Brothers Food Mart to hire employees who were not authorized to work in the United States and that Defendants "did not require Brothers Food Mart to complete Forms I-9 for undocumented workers."[86]

The Court finds that the 2011 Settlement Agreement, the March 18, 2011 Notice of Intent to Fine and the March 18, 2011 letter attached thereto are relevant to the manner and means by which Defendants allegedly carried out the conspiracy charged in Count One of the Superseding Indictment, including whether the continued failure to complete Forms I-9 for Brothers Food Mart employees was knowing or accidental. The Court recognizes that the 2011 Settlement Agreement was entered into between Brother's Petroleum, LLC and ICE, and that neither Hamdan nor Mousa are parties to the Settlement Agreement.[87] Nonetheless, the 2011 Settlement Agreement concerns allegations that a Brothers Food Mart store – Brother's Petroleum, LLC – failed to comply with the employment eligibility verification requirements set forth in the Immigration and Nationality Act prior to June 2011. Additionally, Hamdan signed the 2011 Settlement Agreement on behalf of Brother's Petroleum, LLC and, as such, was aware of the terms of the Settlement Agreement and Brother's Petroleum, LLC's alleged failure to complete Forms I-9 for its employees.[88] The March 18, 2021 letter attached to the Notice of Intent to Fine is also addressed to Hamdan as the representative of Brother's Petroleum, LLC.[89] As

---

[86] R. Doc. 47 at ¶¶ 26, 27, 29.
[87] R. Doc. 112-2.
[88] *Id.* at p. 5.
[89] R. Doc. 113-3 at p. 1.

such, the Court finds the documents relevant to the conspiracy charged in Count One and, specifically, to the Government's allegations that Defendants carried out the conspiracy by not requiring Brothers Food Mart to complete Forms I-9 for undocumented workers.[90]

### B. The March 18, 2011 Letter and Notice of Intent to Fine Are Not Excluded Under Fed. R. Evid. 403, but the 2011 Settlement Agreement Must Be Excluded Under Fed. R. Evid. 403.

#### 1. The March 18, 2011 Letter and Notice of Intent to Fine.

Although all three documents are relevant to the conspiracy charged in Count One of the Superseding Indictment, the Court finds that Defendants have failed to show that the March 11, 2018 letter and Notice of Intent to Fine should be excluded under Fed. R. Evid. 403 because their probative value is substantially outweighed by the potential risk of prejudice.  The Court finds that the Notice of Intent to Fine and the letter attached thereto show that Brother's Petroleum, LLC was fined $21,175.00 by ICE in 2011 for failing to comply with employment eligibility verification requirements set forth in the Immigration and Nationality Act, which governs the unlawful employment of aliens.[91]  Specifically, the documents show that ICE conducted an investigation and determined that Brother's Petroleum, LLC failed to prepare, retain, or properly complete Employment Eligibility Verification Forms, or Forms I-9, for 25 individuals.[92]  The March 18, 2011 letter, directed to Hamdan, further advised Hamdan, as the representative for Brother's Petroleum, LLC, that

---

[90] R. Doc. 47 at ¶ 29.
[91] 8 U.S.C. § 1324a.
[92] R. Doc. 112-3 at pp. 4-7.

Brother's Petroleum, LLC "must immediately cease all illegal activity and maintain compliance with all regulations," and that, "The penalties associated with the violations you have committed are severe.  Criminal penalties include fines and or [sic] imprisonment.  Civil penalties may also be imposed."[93]  The Court finds that these two documents show that in 2011, Hamdan had notice that a Brothers Food Mart store failed to comply with employment eligibility verification requirements established by federal law, including the requirement to accurately prepare and retain Forms I-9.[94]

The Court further finds that although Hamdan's signature is on the 2011 Settlement Agreement and the March 18, 2011 letter and Notice of Intent to Fine were addressed to Hamdan as the representative of Brother's Petroleum LLC, the documents do not otherwise reference Defendants or specific actions taken by them.[95]  As such, the Court is not persuaded that the jury will be confused by the documents, or that the jury will view them as an admission that Defendants were employing or harboring illegal aliens.  The Court further finds Defendants' reliance upon *United States v. Hays* for the exclusion of the three documents under 403 misplaced.[96]  In *Hays*, the Fifth Circuit concluded that evidence of a settlement agreement was inadmissible under Fed. R. Evid. 408 because the government did not argue that the evidence was not introduced under one of the exceptions set forth in Rule 408(b).[97]

---

[93] R. Doc. 112-3 at p. 1.
[94] R. Doc. 139 at p. 7.
[95] R. Doc. 112-3.
[96] *Hays*, 872 F.2d 582, 588-89 (5th Cir. 1989).
[97] *Id*.

The Fifth Circuit's analysis of Rule 408 in *Hays* is not relevant to the issue of exclusion under Fed. R. Evid. 403.

Further, as recognized by the Fifth Circuit, "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[98]  The Court concludes that Defendants have failed to show that the March 18, 2011 Notice of Intent to Fine or the March 18, 2011 letter attached to the Notice of Intent to Fine would be unfairly prejudicial if introduced at trial, or that such prejudice substantially outweighs their probative value.   The Court therefore finds that the evidence is not subject to exclusion under Rule 403.

### 2.  *The 2011 Settlement Agreement Must Be Excluded Under Fed. R. Evid. 403.*

The Court reaches a different conclusion as to the 2011 Settlement Agreement. Although the Government claims that it does not intend to use the Settlement Agreement as evidence of an admission of wrongdoing,[99] that assertion is contradicted by the clear language of Paragraph 10 of the Superseding Indictment. Paragraph 10 alleges that, "On or about June 1, 2011, **IMAD HAMDAN *admitted* that he and Brother's Petroleum failed to comply with employment eligibility verification requirements established by federal law, including the requirements surrounding the accurate preparation and retention of USCIS Form I-9 (Employment

---

[98] *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993) (quotation omitted); *See*, *United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (same).
[99] R. Doc. 344 at pp. 7-8 (*citing* R. Doc. 139 at p. 6, n.3).

Eligibility Verification)."[100]  The Government does not dispute Defendants' assertion that the Government produced the 2011 Settlement Agreement in response to Defendants' request for the "admission" referenced in Paragraph 10 of the Superseding Indictment.[101]  Thus, it is evident to the Court that the Government intends to introduce the 2011 Settlement Agreement as evidence of Hamdan's "guilt" in failing to properly prepare and maintain Forms I-9 for Brothers Food Mart employees.  The Court, however, agrees with Defendants that the 2011 Settlement Agreement contains no acceptance of criminal responsibility or culpability by Hamdan, as alleged in Paragraph 10 of the Superseding Indictment.  The 2011 Settlement Agreement merely incorporated by reference the allegations contained in the Notice of Intent to Fine regarding *Brother's Petroleum, LLC*'s alleged violation of the Immigration and Nationality Act.[102]  The Notice of Intent to Fine contains no allegations of actions taken by Hamdan.

Based on the foregoing, and the fact that Hamdan's name is on the 2011 Settlement Agreement, the Court finds that there is a substantial risk that jurors will view the Settlement Agreement as an admission of guilt by Hamdan that he was employing illegal aliens, even though the settlement concerned only incomplete, rather than missing, Forms I-9 for employees.[103]  The Fifth Circuit has explained that, "the potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound.  It does not tax the imagination to envision

---

[100] R. Doc. 47 at p. 3, ¶ 10 (emphasis added).
[101] R. Doc. 112-1 at pp. 1-2; *See, generally*, R. Docs. 139 & 344.
[102] R. Doc. 112-2 at p. 2; R. Doc. 112-3.
[103] R. Doc. 112-3

the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back."[104]  The Court agrees with the Fifth Circuit's assessment of the potential impact a settlement agreement can have on a jury.  Although the Court finds the 2011 Settlement Agreement relevant to the issue of intent and whether Hamdan knowingly failed to properly prepare and maintain Forms I-9 for Brothers Food Mart employees, the Court has already determined that the 2011 Notice of Intent to Fine and letter attached thereto may be introduced for that purpose.  Because the Superseding Indictment, and the Government's response to discovery requests, refer to the 2011 Settlement Agreement as an admission by Hamdan, the Court finds that the probative value of the 2011 Settlement Agreement is substantially outweighed by the risk of unfair prejudice, confusing the issues, and misleading the jury.  Accordingly, the 2011 Settlement must be excluded from trial under Fed. R. Evid. 403.

### C. The March 18, 2011 Letter and Notice of Intent to Find Are Not Excludable Under Fed. R. Evid. 408, but the 2011 Settlement Agreement Must Be Excluded Under Fed. R. Evid. 408 & 403.

As an initial matter, the Court finds the neither the 2011 Settlement Agreement, the 2011 Notice of Intent to Fine nor the March 18, 2011 letter attached thereto constitute compromise offers or negotiations or conduct or statements made during compromise negotiations.  The Court agrees with the Government that the 2011 Notice of Intent to Fine and the letter attached thereto constitute the underlying claim that was settled through the 2011 Settlement Agreement.  This is evident from

---

[104] *United States v. Hays*, 872 F.2d 582, 589 (5th Cir. 1989).

the fact that the 2011 Settlement Agreement specifically states that, "the Parties desire to settle fully and finally the Action," and defines "Action" as the March 18, 2011 Notice of Intent to Fine issued by ICE "in a case denominated as In the Matter of Brother's Petroleum, LLC, NO19NR09NO0006."[105]   The Court rejects Defendants' assertion that the 2011 Notice of Intent to Fine and attached letter were "the government's opening bid in its effort to resolve its dispute with the Brothers companies"[106] as mere speculation.  As such, the Court finds that the three documents are not inadmissible under Rule 408(a).

The Court recognizes, however, that the Advisory Committee Notes to Rule 408 specifically provide that, "While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto."[107]   This Court has previously cited the Advisory Committee Notes for the notion that Rule 408 applies to settlement agreements.[108]   Nonetheless, the Advisory Committee Notes to Rule 408 also make clear that, "This rule as reported makes evidence of settlement or attempted settlement of a disputed claim inadmissible when offered as an admission of liability or the amount of liability.  The purpose of this rule is to encourage settlements which would be discouraged if such evidence were admissible."[109]   The Court has already determined that Paragraph 10 of the Superseding Indictment

---

[105] R. Doc. 112-2.
[106] R. Doc. 345 at p. 5.
[107] Fed. R. Evid. 408, Advisory Committee Notes, 1972 Proposed Rules.
[108] *Fick v. Exxon Mobil Corporation*, Civ. A. No. 13-6608, 2016 WL 81716, at *3 (E.D. La. Jan. 7, 2016) (quoting *Safford v. St. Tammany Parish Fire Protection Dist. No. 1*, Civ. A. No. 02-0055, 2003 WL 1873907, at *5 (E.D. La. April 11, 2003)) (internal quotation marks omitted).
[109] Fed. R. Evid. 408, Advisory Committee Notes, 1974 Enactment.

shows the Government intends to introduce the 2011 Settlement Agreement as an admission of liability by Hamdan for failing to properly complete Forms I-9 for Brothers Food Mart employees.  Such use is prohibited by Rule 408(a)(1).

The Court further rejects the Government's assertion that the 2011 Settlement Agreement is admissible under the criminal case exception set forth in Rule 408(a)(2). The Government cites only one out-of-circuit decision to support its position, *United States v. Paulus*, and the Court agrees with Defendants that the Government's reliance on *Paulus* is misplaced.[110]  In *Paulus*, the Sixth Circuit Court of Appeals found no plain error in the district court admitting an order of the Kentucky Board of Medical Licensure ("KBML") against the defendant-physician under Rule 408(a)(2).[111]  In doing so, however, the court explained that the government had "introduced statements, made by Paulus, as part of a stipulated agreement with the KBML over his medical license."[112]  The *Paulus* court further explained that, "As the government argues, the agreement contains a concession by Paulus that the KBML 'could conclude that he had engaged in conduct' which violates the law."[113]

In contrast, neither the 2011 Settlement Agreement nor Notice of Intent to Fine contain any concession or statement made by Hamdan and the Government has failed to direct the Court to any concessions or statements made by Hamdan therein. As repeatedly stated in this Order, the 2011 Settlement Agreement merely incorporated by reference the allegations contained in the 2011 Notice of Intent to

---

[110] R. Doc. 139 at p. 5 (citing *Paulus*, 894 F.3d 267, 280 (6th Cir. 2018)).
[111] 894 F.3d at 280.
[112] *Id*.
[113] *Id*.

Fine. Thus, at best, Hamdan merely agreed that the Government had charged Brother's Petroleum, LLC with certain violations of the Immigration and Nationality Act. The Court further notes that the Government has failed to cite any cases from within this Circuit that cite *Paulus* as authority, and the Court has found none.

Finally, to the extent the Government seeks to introduce the 2011 Settlement Agreement as evidence of notice and intent as to Hamdan, the Court finds that the evidence is admissible for that purpose under Rule 408(b).[114] However, the Advisory Committee Notes from the 2006 Amendment to Rule 408 provide that, "Statements made in compromise negotiations of a claim by a government agency may be excluded in criminal cases where the circumstances so warrant under Rule 403."[115] The Court finds that while the 2011 Settlement Agreement may be admissible under Rule 408(b), its probative value remains substantially outweighed by the risk of prejudice to Hamdan if it is allowed at trial.[116]

Based on the foregoing analysis, the Court finds that the March 18, 2011 Notice of Intent to Fine and the March 18, 2011 letter attached thereto are relevant to the issue of intent as to the conspiracy charged in Count One of the Superseding Indictment under Fed. R. Evid. 401, and they are not excludable under Fed. R. Evid. 403 or 408. The Court further finds that while the 2011 Settlement Agreement is also relevant to Count One of the Superseding Indictment, it is inadmissible under

---

[114] *Safford v. St. Tammany Parish Fire Protection Dist. No. 1*, Civ. A. No. 02-0055, 2003 WL 1873907, at *5 (E.D. La. April 11, 2003) (concluding that a consent decree could be introduced to establish defendant's intent to discriminate against plaintiff).

[115] Fed. R. Evid. 408, Advisory Committee Notes, 2006 Amendment.

[116] *See*, discussion in Section III.B.2 of this Order.

Fed. R. Evid. 403.  Additionally, to the extent Defendants seek to prevent Paragraph 10 of the Superseding Indictment from being read or shown to the jury, Defendants fail to cite any legal authority for the Court to take such action in the context of a motion in limine, which is currently before the Court.  This Court only has discretion to strike surplusage from an indictment upon motion of a defendant under Fed. R. Crim. P. 7(d).  No such motion is currently before the Court.

## IV.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion *In Limine* – Civil Settlement Agreement and Proceedings[117] is **GRANTED in part** and **DENIED in part**.  The Motion is **GRANTED** to the extent that Defendants seek to exclude from trial the June 1, 2011 Settlement Agreement,[118] which is inadmissible at trial under Fed. R. Evid. 403.  The Motion is **DENIED** to the extent that Defendants seek to prohibit from introduction at trial the March 18, 2011 Notice of Intent to Fine and the  March 18, 2011 letter attached thereto,[119] and to the extent Defendants seek to prevent Paragraph 10 of the Superseding Indictment from being read or shown to the jury at trial.

New Orleans, Louisiana, May 7, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[117] R. Doc. 112.
[118] R. Doc. 112-2.
[119] R. Doc. 112-3.